**In re Tarsha Evette YANCEY, Debtor.**

**Tarsha Evette Yancey and George W. Stevenson, Plaintiffs,**

**v.**

**Citifinancial, Inc., Defendant.**

**Bankruptcy No. 00–27949whb. Adversary No. 03–0167.**

United States Bankruptcy Court, W.D. Tennessee.

Nov. 21, 2003.

B. David Sweeney, Reid, Sweeney, Mueller & Vaughan, PLLC, Memphis, TN, M. Scott Barrett, Dennis T. Trainor, Barrett & Associates, Chicago, IL, for Plaintiffs.

R. Alan Pritchard, Frank Childress, R. Spencer Clift, III, Baker, Donelson, Bearman & Caldwell, Memphis, TN, for Defendant.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS COMPLAINT

WILLIAM HOUSTON BROWN, Bankruptcy Judge.

This adversary proceeding, a proposed class action filed by one chapter 13 debtor and her chapter 13 trustee, is before the Court on the Defendant's motion to dismiss the Plaintiffs' complaint for its failure to state a claim upon which relief can be granted. FED. R. BANKR.P. 7012(b). This opinion contains the Court's conclusions of law, resulting in the Court's order dismissing the complaint without prejudice to the Plaintiffs filing a motion to reconsider the proof of claim filed by the Defendant in this case. *See* 11 U.S.C. § 502(j).

## ISSUE OF LAW

This opinion does not attempt to determine any disputed facts, although the facts material to the issue before the Court appear to be undisputed; rather, this opinion contains an analysis of the determinative legal issue: Is there a private right of action under a combination of Bankruptcy Code § 105(a) and Bankruptcy Rule 2016 that would permit this Court to hear and determine this putative class action complaint? The Plaintiffs depend upon case authority from bankruptcy courts within other Circuits, but this Court concludes that the holding of and analysis contained within the Sixth Circuit's authority, *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir.2000), dictates that there is no private right of action, or class action, permissible.

## SUMMARY OF PROCEDURAL BACKGROUND AND COMPLAINT

The Debtor, Tarsha Evette Yancey ("Debtor"), filed a petition under chapter 13 of title 11 on July 6, 2000. On the same day she filed a plan proposing to pay 100% to her unsecured creditors. On August 10, 2000, the Defendant Citifinancial filed its proof of claim. The claim asserted an amount of $8,524.10, plus "Other charges allowable" in legible handwriting as "Atty fee $115.00, Int. $147.13" for a total claim of $8,786.23. The category "Secured" was checked, and the proof of claim was signed by Kimberly S. Battle and dated August 9, 2000. On August 29, 2000, the Court granted the Debtor's motion to reduce the percentage to unsecured creditors to 70%, and on September 12, 2002, an order of confirmation of the Debtor's plan was entered. The plan's list of creditors included Citifinancial's bifurcated claims: $5,500.00 as secured to be paid at $191.00 monthly and accruing interest at 15%, and $3,286.23 unsecured to be paid the 70% along with other unsecured creditors.

Chapter 13 plans in this district are routinely confirmed quickly and prior to the bar date for creditors filing proofs of

claims.[1] This is done in part to facilitate the start of payments to secured creditors by the trustee. Although the percentage to unsecured creditors was fixed by order prior to confirmation in this case, it is also routine in this district for confirmation orders to recite that the percentage to unsecured creditors will be established after the bar date for filing such proofs of claims has expired. As a corollary to this practice, the chapter 13 trustee routinely examines proofs of claims after the bar date for filing has passed and submits an administrative order that allows those claims to which the trustee does not object. Such an order was submitted in this case and was entered on September 24, 2002, allowing twenty claims, including Citifinancial's $5,500.00 secured claim and Citifinancial's $3,286.23 general unsecured claim, the same amounts that were found in the confirmation order. As is routine, that allowance order contains the following paragraph:

> Pursuant to Chapter 13 Rule 3007 [a reference to FED. R. BANKR.P. 3007], the claims which have been filed as recited above shall be deemed allowed for the purpose of distribution unless objection is made by the debtor or other party in interest, within 30 days from the date of this order.

Consistent with the next paragraph of that administrative order, the order shows that it was to be noticed to the chapter 13 trustee, who prepared it, the Debtor and the Debtor's chapter 13 attorney. That paragraph specifically provides that the Debtor is given 30 days from the order's date "to examine the proofs of claim [which are maintained as public records in the chapter 13 trustee's office] and to file a written objection to any claim which may be improper." The absence of such an objection, according to that paragraph, would "be deemed an approval by the debtor(s) of the claims recited above and the claims shall be allowed for the purpose of distribution pursuant to the confirmed plan and other orders of this Court." In other words, this administrative order is a part of a process to give specific notice to a debtor and the debtor's attorney of those claims that had been filed with the trustee and to give those parties an opportunity to examine the claims and to object to any of them.[2]

This Debtor did in fact object to one claim, but prior to the administrative order described above. On October 31, 2001, the Debtor objected to the General Sessions Criminal Court's $510.25 general unsecured claim. No order on that objection appears in the case file. Two additional administrative orders were later entered, allowing one additional claim each, again subject to timely objections. Presumably, the chapter 13 trustee, who is one of the Plaintiffs in this adversary proceeding, pursued distributions under the confirmed plan and allowance orders, and administration of the case continues at this time, with no discharge of the Debtor having yet been entered.

This procedural background is important, not only for the analysis of this adversary proceeding, but also to point out that the chapter 13 procedure in this judicial district is not necessarily the same as the procedures that might be followed in other districts. Nationwide, there is great variation in the way that chapter 13 cases

---

**1.** The long delay between plan filing and confirmation in this case, which is not typical in this district, is not explained in the case file, but that delay has no apparent relevance to this adversary proceeding.

**2.** The Court does not have before it any issue of whether this administrative order should be noticed to other parties in the bankruptcy case.

are administered and processed, including variation in the claims allowance process. In many districts, the chapter 13 plans are not confirmed until after the claims bar date has expired, a procedure that may delay distribution to any creditor for several months. In some districts, the claims process does not include the entry of an administrative allowance order such as the one described here; rather, the claims filed simply are deemed allowed unless a party in interest objects to the allowance. See 11 U.S.C. § 502(a). The procedure in this district affirmatively alerts the debtor and debtor's counsel of the claims that have been filed and of their opportunity to object to allowance.

On February 21, 2003, the Debtor filed this adversary proceeding, including a cover sheet asserting "Class Action Complaint for violation pursuant to Bankruptcy Rule [sic] 506(b), and Bankruptcy Code Section 362." The six page complaint alleged that the Defendant violated Bankruptcy Rule 2016 (Count I) and Code § 362 (Count II) by seeking attorney's fees through a proof of claim rather than through a separate application or motion. The complaint asserted that under "Bankruptcy Rule [sic] 506(b)" defendant "must first obtain court approval" for the attorney's fees. The complaint sought as damages any attorney's fees paid to the Defendant with interest, disgorgement of sums wrongfully obtained, punitive damages, and an order enjoining the Defendant from obtaining attorney's fees in any chapter 13 case without making specific application and/or motion to the bankruptcy court. The Plaintiffs contend that Citifinancial's attorney's fees in Ms. Yancey's case would not have been claimed absent

the bankruptcy.[3] All of the claims in the complaint rely upon bankruptcy causes of action, unlike some reported class actions in bankruptcy courts that have asserted not only the Bankruptcy Code but also non-bankruptcy law as a source for a cause of action.

The Court has not yet ruled upon whether the complaint should be certified as a class action. The Defendant filed its motion to dismiss for failure to state a claim upon which relief can be granted or, in the alternative, to compel arbitration, and a memorandum in support thereof, as well as a motion to continue the preliminary hearing on class certification until the Court ruled on the motion to dismiss. The delay in the class certification hearing was granted by the Court.

The Plaintiffs filed a brief in opposition to the Defendant's motion to dismiss and in footnote one "concede[d] that Citifinancial's claim is undersecured and that Bankruptcy Code § 506(b) is not applicable. Plaintiffs hereby amend the Complaint to delete references to violations of § 506(b)." (Pl. Reply Br., at 1 n. 1) In footnote two, "Plaintiffs hereby amend the Complaint to strike Count II [violation of § 362] and withdraw Count II without prejudice." (*Id.*, at 2 n. 2). However, Plaintiffs continue to assert "violations of Fed.R.Bankr.P. 2016 and that these violations are actionable thereunder and under § 105." (*Id.*, at 1 n. 1). In further briefing, the Defendant accepted the Plaintiffs' footnotes as a notice of voluntary dismissal per FED. R.BANKR.P. 7041, which incorporates FED. R.CIV.P. 41, and the Defendant's briefing then responded to the remaining claim under Rule 2016 and Code § 105.[4]

---

3. This contention is disputed, but its resolution is not material to the legal issue before the Court in the motion to dismiss.

4. However, in the event its motion to dismiss is denied, the Defendant reserved the right to request the Court to compel the Plaintiffs to submit a proper amended pleading as re-

Since it is clear from the briefing and oral argument that the Plaintiffs now rely solely on the position that a cause of action exists under a combination of Bankruptcy Rule 2016 and Code § 105, and since the Court has concluded that such a private right of action does not exist under the law, dismissal of the complaint will render further amendments unnecessary.

## DISCUSSION

■ The Court can see no way for the Plaintiffs to escape the *Pertuso* holding and rationale. In that case, the Sixth Circuit had before it a complaint asserting a private right of action for the former chapter 7 debtor who sued Ford Motor Credit Company on alleged violations of the automatic stay under Code § 362 and the discharge injunction under Code § 524. The *Pertuso* plaintiffs argued that their private right of action was implied in the law under a combination of the above Code sections and § 105. The latter section, as summarized by the Circuit opinion, "permits courts to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [11].'" *Pertuso*, 233 F.3d at 421 (quoting 11 U.S.C. § 105). The Circuit opinion looked to *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for the four factors that the Supreme Court identified for determination of whether a private right of action exists under a federal statute:

(1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the

quired by Bankruptcy Rule 7015 and then to allow the Defendant to formally respond to

underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law.

*Id.* (citing *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2082). Then, the Circuit looked to later Supreme Court authority for "'the most important inquiry,'" that is, "'whether Congress intended to create the private remedy sought by the plaintiffs.'" *Id.* (quoting *Touche Ross & Co., v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

■ The Circuit opinion then stated that the *Touche Ross* authority required "affirmative evidence of congressional intent in the language and purpose of the statute or in its legislative history." *Id.* The immediate problem for the Plaintiffs is that the Supreme Court and Sixth Circuit were looking to congressional intent in statutes, not rules where there is probably never an indication of legislative intent. Notwithstanding this obvious problem, just as the *Pertuso* Court inquired, so does this Court in asking whether there is any evidence of congressional intent in the combination of the Rule and Code section relied upon by these Plaintiffs for a private remedy, and the Court finds no such evidence. The Plaintiffs provided no evidence of congressional intent, relying instead on opinions from bankruptcy courts in other circuits and disagreeing with any binding effect of *Pertuso* in this adversary proceeding. This Court finds the more compelling post-*Pertuso* analysis to be from a bankruptcy court within this Circuit. See *Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457 (Bankr. E.D.Tenn.2002) (concluding no private right of action under Code § 502).

that formal amendment.

As to Code § 362, which was originally pled by the Plaintiffs as one Code section violated by the Defendant when it filed its proof of claim, that section has been withdrawn from the complaint as a source of any cause of action. Nevertheless, the *Pertuso* authority points out that a specific remedy does exist in the Code for violations, even willful violations, of the automatic stay. See *Pertuso,* 233 F.3d at 422. That Court found no similar congressional remedy for violations of Code § 524's discharge injunction. Nor did that Court find an implied private remedy in § 524. *Id.*

Contrasting where Congress had specifically created a remedy in § 362 with where it had not, the *Pertuso* Court pointed out that in its prior unpublished decision it had found no private right of action for violation of § 363, which governs cash collateral and sales or use of property of the estate. *Id.* (discussing *Kelvin v. Avon Printing Co.,* No. 94–1999, 1995 WL 734481 (6th Cir. Dec.11, 1995) (unpublished)). Reaffirming that unpublished holding, the Court then went on to conclude that "§ 105 could not be invoked to remedy breaches" where no statutory remedy for such a breach exists. *Pertuso,* 233 F.3d at 423. The Court specifically stated that § 105 did not confer " 'broad remedial powers' " and that the section's reference to " 'provisions of this title' " requires a linkage to a congressionally-created remedy. "A court cannot legislate to add [remedies not created by Congress]." *Id.* (quoting *Kelvin,* 1995 WL 734481, at \*4). Moreover, in a footnote, the *Pertuso* Court specifically rejected contrary authority, stating that § 105 vested bankruptcy courts with contempt power, not with the authority to " 'create substantive rights that are otherwise unavailable under applicable law. . . .' " *Pertuso,* 233 F.3d at 423 n. 1 (quoting *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986)); see also *In re Sims,* 278 B.R. at 467.

With this *Pertuso* precedent, can there be a private cause of action, hence a class action complaint, under a combination of § 105 and Bankruptcy Rule 2016? If the Circuit could find no such right of action under a combination of another Code section and § 105, this Court cannot find a reason to believe the Circuit would conclude otherwise when only a Rule violation forms the linkage for the right of action. Compare *In re Sims,* 278 B.R. at 468–70 (discussing the *Pertuso* authority as it would apply to a private right of action based on alleged improper use of official bankruptcy form 10, the proof of claim).

The Plaintiffs argue that this Defendant improperly added attorney's fees to its proof of claim, without following what the Plaintiffs see as a mandated procedure for anyone seeking attorney's fees from a bankruptcy estate. They argue that Bankruptcy Rule 2016 applies to all seeking such fees, including a creditor, and that the Rule mandates that one must file a detailed fee application. There is some authority holding that the Rule procedure does apply to a creditor such as this one. See, e.g., *Tate v. NationsBanc Mortgage Corp. (In re Tate),* 253 B.R. 653, 668 (Bankr.W.D.N.C.2000) (holding, *inter alia,* that Rule 2016 requires creditors seeking attorneys' fees to file fee applications); but compare *Ballard v. Chrysler Fin. Corp. (In re Powe),* 281 B.R. 336, 347 (Bankr. S.D.Ala.2001) (disagreeing with this limited part of the *Tate* holding and concluding that the broader and appropriate question was one of adequacy of notice of the requested fees). There is, however, authority, including from a bankruptcy and affirming district court in Tennessee, that an unsecured creditor may be entitled to pre-bankruptcy attorney's fees under its contract with the debtor and under applicable state law. See *Keaton v. Boatmen's Bank of Tennessee (In re Keaton),* 182 B.R. 203

(Bankr.E.D.Tenn.1995), *affirmed,* 212 B.R. 587 (E.D.Tenn.1997), *vacated,* No. 97–6244, 145 F.3d 1331 (6th Cir. Apr.30, 1998) (unpublished) (granting motion to dismiss appeal as moot after bank filed an amended proof of claim deleting its claim for attorney fees and ordering vacation of bankruptcy court decision). For purposes of the pending motion, this Court does not need to decide whether an undersecured creditor may claim attorney's fees on its proof of claim, since, as will be pointed out later, there is a remedial route other than this adversary proceeding to reach that decision. However, assuming that the Rule would apply to creditors for purposes of this opinion, there is no remedy within the Rule itself for a failure to file such an application. Presumably, a violation of that Rule would mean that a fee would not be allowed, and these Plaintiffs argue this to be one purpose of their complaint. But, the complaint seeks more than mere disallowance of any attorney's fees to the Defendant; it also seeks monetary and punitive damages, as well as injunctive relief.

■ Bankruptcy Rules, which are procedural in nature of course, are not written by Congress, although it does have the power to prevent enactment of procedural rules.[5] The Bankruptcy Rules, like other federal procedural rules, are automatically enacted unless Congress affirmatively acts to prevent the enactment. The fact that Congress permitted Rule 2016 to be enacted by taking no preventive step does not indicate any congressional intent to create or imply a private remedy for a violation of

that or any other procedural rule. Reading that much into a failure of Congress to act would be the ultimate in judicial legislation.

■ As the Sixth Circuit pointed out, the language of § 105 is not beyond limits. Section 105(a) does not give the bankruptcy courts limitless legal or equitable authority. The first sentence of that section refers to the court's authority "to carry out the provisions of this title [11]." If § 105(a) requires something as a link for a bankruptcy court's reason to act, the Code language would require the linkage to be found in title 11. This conclusion is underscored by 28 U.S.C. § 2075, which provides that bankruptcy rules prescribed by the Supreme Court "shall not abridge, enlarge, or modify any substantive right." A private cause of action is a substantive right, not a procedural one, and, under the *Pertuso* authority, § 105(a) cannot, standing alone, create a private right of action. The Circuit read the first sentence of this section to mean that there must first be a provision in the title for the court to carry out. No provision for a private remedy under Rule 2016 is found, and it would be extreme bootstrapping for the Court to say that § 105 creates a remedy for a rule violation. Obviously, the *Pertuso* Court was not so inclined.

The second sentence of § 105(a) states that the court is not precluded from *sua sponte* "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

---

5. The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.

 Such rules shall not abridge, enlarge, or modify any substantive right.

 The Supreme Court shall transmit to Congress not later than May 1 of the year in

which a rule prescribed under this section is to become effective a copy of the proposed rule. The rule shall take effect no earlier than December 1 of the year in which it is transmitted to Congress unless otherwise provided by law.

28 U.S.C. § 2075.

It is this sentence, which does mention rules, that forms part of the basis for the Plaintiffs' arguments and for some courts that have found a cause of action for complaints similar to this one. See, e.g., *In re Tate,* 253 B.R. at 666–69 (although agreeing that the court's authority under § 105 must be linked to some specific Code provision, that court concluded that a combination of § 506(b) and Rule 2016, and a creditor's violation of that combination, gave the court authority to use § 105 to "rectify" the creditor's error). Although this sentence of § 105(a) includes a reference to rules, it does not imply that a court can create a private cause of action; rather, it states that the court may *sua sponte* act to enforce or implement an order or court rule. Being asked by a party to create a private remedy is not the same as *sua sponte* action to enforce the court's own order or rule.

██ It may be that in some circumstances a party may alert a bankruptcy court to what that court may perceive to be an abuse that is so egregious as to require *sua sponte* action. See, e.g., *In re Latanowich,* 207 B.R. 326 (Bankr.D.Mass. 1997), where that court acted on the *pro se* debtor's motion to sanction a creditor's practice of coercing reaffirmation agreements that were not filed with the bankruptcy courts. This Court concludes that while it is easy to engage in an analysis to justify the court's taking perceived remedial action, the first inquiry must be whether there is already a congressionally-created remedy in existence for the alleged wrong. If so, then *Pertuso* should force the Court to ask why it should entertain a judicially-created remedy. That inquiry in the present case reveals that there is a congressionally-created remedy for the Plaintiffs' concerns. Code § 502(j) specifically provides that an allowed claim may be reconsidered "for cause," and no time limit is

placed on such a reconsideration. See FED. R. BANKR.P. 9024 (excepting motions to reconsider claims allowance or disallowance from FED. R. CIV. P.'s 60(b) time restrictions). Moreover, there is a procedural rule to implement this statute. Bankruptcy Rule 3008 states that a party in interest, which would include the trustee or a debtor, may move to reconsider an order allowing or disallowing a claim, and no time limit is placed on the filing of such a motion. Although the issue of what constitutes cause is not formally before this Court, it would appear that showing cause is relatively easy, and the allegation that the Defendant was an undersecured creditor not entitled to attorneys' fees under § 506(b) would appear to establish cause for the Court to reconsider the allowance of this claim and enter an appropriate order after hearing fully the parties' positions on the merits of that reconsideration. Thus, there is a remedy for this Debtor and for similarly situated debtors other than the creation of a class action remedy. The existence of a congressionally-created remedy chills any argument under § 105(a) that it is "necessary or appropriate" for the Court to permit a private remedy. These operative words are crucial to the statute's meaning.

The reconsideration remedy is but one statutory remedy in existence. These Plaintiffs, of course, could have objected to the Defendant's claim in the first instance. The objection opportunity provided by § 502(a), and implemented by Rule 3007, is a remedy in itself. The Court is not ruling that these Plaintiffs should be prejudiced now by their failure to object, but the Court does point out that it is difficult for them to argue that they need a new remedy when one of the Plaintiffs, the trustee, prepared and filed the administrative order allowing the claim. Unlike some of the reported class actions, which involved hidden actions on the creditor's part in the

claims process, this Defendant did not conceal its claim for attorney's fees. Compare *1st Franklin Fin. Corp. v. Barkley (In re Anthony)*, No. 00–13385, Adv. Proc. No. 02–1105, 2003 WL 22931323 (Bankr. N.D.Miss. Oct. 31, 2003), *available at* http://www.msnb.uscourts.gov/Opinions.htm. (denying a motion for summary judgment where the complaint alleged the defendant's claim concealed the overcharged credit insurance premiums).

Of course, the Plaintiffs argue against the conclusion that a private remedy does not exist, saying that it puts an unfair burden on chapter 13 debtors to examine the many proofs of claim and to object to them or move for their reconsideration. Certainly that is something of a burden, but, why would it be an unfair burden? Debtors in chapter 13 voluntarily file their cases, submitting themselves to an adjustment of their debts. A part of this voluntary process necessarily involves them in a claims analysis, making any argument by a debtor that it is burdensome for the debtor to examine proofs of claims a hollow one. There is no argument in this case that the Debtor did not get notice of the Defendant's claim. This Debtor, through counsel, did object to one claim in the case, demonstrating that an objection is a relatively simple pleading. The one filed is a single-page document. There is nothing to indicate that the proofs of claim in this or other chapter 13 cases in this district are difficult to see or review. Certainly, they are not difficult to review for one of the Plaintiffs, the trustee.[6]

 Essentially, in the absence of a necessity argument for its remedy, the Plaintiffs are saying that it is "appropriate" for the Court to permit a private remedy under § 105(a). As stated earlier,

some courts have accepted that argument, but the Sixth Circuit authority drives this Court in the other direction. If a sufficient remedy already exists in the Code, it is not appropriate for this Court to engage in a private remedy suit. " '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *In re Sims*, 278 B.R. at 466 (quoting *Board of Trustees v. City of Painesville*, 200 F.3d 396, 399 (6th Cir.1999), further quotation omitted). Understanding that denial of a private remedy, hence this class action, will deprive the Plaintiffs' attorneys of a possible class action fee, the remedy the Court must focus on is this Debtor's and that of other debtors similarly situated. Assuming for this opinion that the Defendant's claim should be reconsidered and perhaps disallowed in whole or part, how can it be said that § 502(j)'s remedy is not adequate to remedy the Debtor's grievance? In fact, that section permits relief "according to the equities of the case," a broad potential brush to the remedy. If it is to be argued that the reconsideration remedy would not prevent the Defendant from continuing to file inappropriate claims in other cases, that argument would presume that this or other similarly situated creditors would ignore the Court's reconsideration order, and the Court has no reason to make such a leap at this time. Moreover, the legal theory that undersecured creditors can never be entitled to pre-bankruptcy attorney's fees is not so well founded as to cause this Court to conclude that it must exercise broad *sua sponte* remedies to curtail what may turn out to be a perfectly legal fee claim. The validity of the claim in this case can be

---

**6.** Again, in this case, we are not talking about a proof of claim that concealed the real basis for the creditor's monetary claim.

tested in a hearing on a claims reconsideration motion, and future remedial action, if necessary, will be driven by the outcome of that hearing.

### SUMMARY

■ This Court concludes that the authority from this Circuit tightly restricts circumstances under which the bankruptcy court may entertain any private remedy suit. If Congress has not created such a remedy, the Court must examine the necessity or appropriateness of its creation with caution. Moreover, if Congress has already created a remedy, as it did in § 502(j), there is even less justification for the Court to approve of a private remedy.

For the reasons stated in this opinion, the Court concludes that the Plaintiffs' complaint must be dismissed without prejudice to the filing of a motion to reconsider the allowance of this Defendant's claim. An order consistent with this opinion will be entered by the Court.