In re Kenneth W. KRAUSE, Rachel
E. Krause, Debtors.

Donald F. Harker, III,
Trustee, Plaintiff

v.

Wells Fargo Bank, NA,
et al., Defendants.

Bankruptcy No. 07–35568.
Adversary No. 08–3111.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Sept. 2, 2009.

Donald F. Harker, III, Dayton, OH, Plaintiff Trustee.

Hannah Hutman, Dayton, OH, for Plaintiff.

Hannah Hutman, Alan J. Statman, Elizabeth L. Hutton, Jeffrey P. Harris, W. Kelly Lundrigan, Cincinnati, OH, for Plaintiff.

Jennifer L. Maffett, Scott A. King, Dayton, OH, for Defendant.

W/E Mortgage, Inc., c/o Service Agent, Anthony J. Wickersham, Cincinnati, OH, Defendant.

### Decision Granting Motion of Wells Fargo Bank, NA to Dismiss Amended Complaint

GUY R. HUMPHREY, Bankruptcy Judge.

### I. *Introduction*

Through this adversary proceeding, Donald F. Harker, the Chapter 7 trustee appointed in the estate case of the debtors, Kenneth and Rachel Krause, seeks a declaratory judgment that Wells Fargo Bank, NA is not a creditor of the debtors and to avoid a mortgage lien filed for record in the name of W/E Mortgage, Inc. based on the allegation that a valid assignment of the mortgage was not recorded on behalf of the holder of the note secured by such mortgage, as required by Ohio law. Based on these claims, the trustee also seeks declaratory and injunctive relief related to Wells Fargo's or its affiliated entities' alleged misconduct and misrepresentations.

In addition to challenging the status of Wells Fargo as a creditor and the validity of its mortgage and requesting equitable relief for Wells Fargo's alleged misconduct, the trustee seeks to certify this adversary proceeding as a class action and requests to be appointed as the class representative for a national class comprised of several sub-classes of all current trustees for bankruptcy estates in which any of the entities affiliated with Wells Fargo (i) claim to be the holder of mortgages but do not hold the notes related to the mortgages; (ii) hold the notes but the mortgages related to those notes were not assigned to those entities, or (iii) with respect to certain states, claim to be the holder of notes but mortgage assignments related to those notes were not recorded under applicable state law.

For the reasons discussed below, Wells Fargo's motion to dismiss is being granted.

### II. *Facts and Procedural Background*

Solely for the purpose of determining whether the Chapter 7 Trustee's *First Amended Complaint to Determine Creditor Status, Secured Status and Avoid Mortgages, Declaratory Judgment, Preliminary and Permanent Injunctive Relief And For Other Relief* (Adv. Docs. 29 and 37) (the "Amended Complaint") should be dismissed, the court deems the facts as

alleged in the Amended Complaint to be true.

On February 21, 2003 Kenneth and Rachel Krause, the Debtors (the "Debtors") executed and delivered to W/E Mortgage, Inc. ("W/E Mortgage") a promissory note in the original principal amount of $90,298 (the "Note"). Concurrently, to secure the Note, the Debtors executed and delivered to W/E Mortgage an open-end mortgage (the "Mortgage") on a parcel of real property located at 1405 Gayhart Drive, Xenia, Ohio 45385 (the "Property"). W/E Mortgage recorded the Mortgage with the Greene County, Ohio Recorder on February 26, 2003.

The Note was endorsed on February 21, 2003 by W/E Mortgage to Wells Fargo Home Mortgage, Inc. ("Wells Fargo Home Mortgage") without recourse by way of an allonge to the Note. No assignment of mortgage was recorded evidencing the transfer of the Note from W/E Mortgage to Wells Fargo Home Mortgage.

On May 5, 2004 Wells Fargo Home Mortgage merged with Wells Fargo Bank, NA ("Wells Fargo"), with Wells Fargo being the surviving entity and Wells Fargo Home Mortgage operating as a division of Wells Fargo.

On December 15, 2007 (the "Petition Date") the Debtors filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code")[1]. The Plaintiff was appointed Chapter 7 Trustee on that same day (the "Plaintiff").

On their Schedule D (Creditors Holding Secured Claims), the Debtors listed Wells Fargo Home Mortgage as the holder of a secured claim on the Property. The last

date for non-governmental entities to file proofs of claim in the Debtors' case was August 4, 2008. No entity, including W/E Mortgage and Wells Fargo, has filed a proof of claim contending to be secured by the Property. *See Claims Register* and Doc. 50 (*Notice of Need to File Proof of Claim Due to Recovery of Assets*).

On January 23, 2008 W/E Mortgage filed a *Motion For Relief From Stay and Notice and Certificate of W/E Mortgage, Inc., c/o Wells Fargo Bank, N.A. (Property Address: 1905 Gayhart Drive, Xenia, Ohio 45385)* (Doc. 12), which the court denied on procedural grounds on February 13, 2008 (Doc. 17). On February 15, 2008 "W/E Mortgage, Inc. c/o Wells Fargo Bank, N.A., a secured creditor herein" filed another *Motion For Relief From Stay and Notice and Certificate of W/E Mortgage, Inc., c/o Wells Fargo Bank, N.A. (Property Address: 1905 Gayhart Drive, Xenia, Ohio 45385)* (Doc. 19) (the "*Stay Motion*"). Attached to the *Stay Motion* were copies of the Note and Mortgage. A copy of the allonge attached to the original Note was not attached. The *Stay Motion* states in pertinent part that:

> W/E Mortgage, Inc. c/o Wells Fargo Bank, N.A., a secured creditor herein, for its Motion to modify the automatic stay imposed by Section 362 of the Bankruptcy Code hereby states as follows:
>
> 1. Movant is the holder of a promissory note and a mortgage on certain real property owned by the debtors known as 1905 Gayhart Drive, Xenia, Ohio 45385, and its mortgage is filed for record in the Greene County Recorder's Office. Copies of the movant's

---

[1]. Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532 (the "Code"), cited hereinafter in this decision as " § _____".

note and mortgage are attached hereto as Exhibit "A" and "B".

No objection was filed to the *Stay Motion* and on March 17, 2008, pursuant to Local Bankruptcy Rule 9021–1 and based upon the movant's certification that no response to the *Stay Motion* had been filed (Doc. 26), the Clerk of Court entered a default order for the court granting W/E Mortgage relief from the stay (Doc. 30). Neither the Plaintiff nor any other party has sought relief from the order granting W/E Mortgage relief from the stay.

On February 20, 2008 "W/E Mortgage, Inc. c/o Wells Fargo Bank, N.A." filed a *Notice of Proposed Abandonment of Property* (Doc. 21). On March 11, 2008 the Plaintiff filed a *Trustee's Objection to Notice of Proposed Abandonment of Real Property Located at 1905 Gayhart drive, Xenia, Ohio 45385* (Doc. 23) and on April 11, 2008 W/E Mortgage, Inc. c/o Wells Fargo, N.A. filed a reply to that objection (Doc. 39). The *Notice of Proposed Abandonment* was withdrawn on April 22, 2008 (Doc. 44).

The Debtors were granted their discharge on April 24, 2008 (Doc. 45).

On April 11, 2008 the Plaintiff initiated this adversary proceeding by filing and serving on W/E Mortgage and Wells Fargo a *Class Action Complaint to Avoid Mortgages, Declaratory Judgment, Preliminary And Permanent Injunctive Relief, and for Other Relief* (Doc. 38; Adv. Doc. 1) (the "Complaint"). Wells Fargo moved to dismiss the Complaint (Adv. Doc.10). On August 14, 2008 the Plaintiff filed and served on W/E Mortgage and Wells Fargo a *Motion of Plaintiff Donald F. Harker, Trustee, to File First Amended Complaint Combined with Notice of Right to Object* and attached a proposed first amended complaint (Adv.Doc.29). On September 10, 2008 the Plaintiff and Wells Fargo filed an *Agreed Order Stipulating to*

*The Filing of Plaintiff's First Amended Complaint Nunc Pro Tunc And Extending Plaintiff's Time to Respond to Motion of Wells Fargo Bank NA to Dismiss First Amended Complaint* (Adv.Doc.37). Pursuant to the agreed order, the First Amended Complaint (the "Amended Complaint") was deemed filed as of August 14, 2008.

W/E Mortgage did not file an answer to the Amended Complaint or otherwise defend this adversary proceeding. Wells Fargo moved again to dismiss the Amended Complaint (the "Motion to Dismiss") (Adv.Doc.33).

On November 4, 2008 the Plaintiff filed a *Motion of Plaintiff Requesting Oral Argument With Notice of Opportunity to Object* (Adv.Doc. 41), which the court granted (Adv.Doc.42). The court heard oral argument on January 23, 2009. On February 3, 2009, the Plaintiff filed *Plaintiff's Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion to Dismiss* which included the Supplemental Brief as attached Exhibit A (Adv.Doc.47).

On February 27, 2009, Wells Fargo filed its *Memorandum of Wells Fargo Bank, NA in Response to Supplemental Brief in Opposition to Motion to Dismiss* (Adv. Doc.52) and on March 6, 2009, the Plaintiff filed a *Plaintiff's Reply in Support of Its Supplement Brief in Opposition to Defendant's Motion to Dismiss* (Adv.Doc.53).

### III. *Allegations of the Amended Complaint and Positions of the Parties*

In Count I of the Amended Complaint, the Plaintiff seeks the disallowance of Wells Fargo's claim pursuant to §§ 501, 502 and 506 based on Wells Fargo's alleged failure to "own or hold" the Note. Through Count II, the Plaintiff seeks to avoid the Mortgage based on his avoidance

power under § 544(a)(3) as a hypothetical *bona fide* purchaser of real property, alleging that the Mortgage was not properly assigned to the entity holding the Note as of the Petition Date, and particularly, that the assignment of the Mortgage was not recorded with the Greene County, Ohio Recorder as required by Ohio Revised Code ("ORC") § 5301.25(A). Through Count III, the Plaintiff seeks to retain the equity, if any, in the Property pursuant to §§ 551 and 554 based on his avoidance of the Mortgage. Count IV seeks an order from this court pursuant to § 105(a) to prevent the alleged abuse of the bankruptcy process by Wells Fargo or any entities related to Wells Fargo (the "Wells Fargo Entities"). Count V seeks a declaratory judgment as to the rights and obligations of the parties under the Note and the Mortgage. Finally, Count VI seeks to enjoin Wells Fargo and the Wells Fargo Entities from making any further misrepresentations to bankruptcy courts as to their status as holder of notes and mortgages.

The Amended Complaint also contains class allegations to support the class certification that the Plaintiff seeks pursuant to Federal Rule of Civil Procedure 23.[2] In particular, the Plaintiff seeks certification of a class comprised of (i) as to Counts I, IV, V and VI, all current and former trustees for bankruptcy estates with assets consisting of real estate throughout the United States in connection with which mortgage notes were assigned to Wells Fargo Entities but the mortgages related to those notes were not assigned (the "National Class"); (ii) as to Counts II, III, V and VI, all current and former trustees for bankruptcy estates with assets consisting of real estate in a defined number of states in connection with which mortgage notes were assigned to Wells Fargo Entities and either the related mortgages were not assigned or the related mortgages were assigned but the assignments not recorded (the "Multi–States Sub–Class"); and (iii) as to Counts II, III, V and VI, all current and former trustees for bankruptcy estates with assets consisting of real estate in Ohio alone in connection with which mortgage notes were assigned to Wells Fargo Entities and either the related mortgages were not assigned or the related mortgages were assigned but the assignments not recorded (the "Ohio Sub–Class"). At this time, no motion to certify a class has been filed and no determination as to certification of any class or subclass has been made.

In its Motion to Dismiss, Wells Fargo argues that all the Counts of the Amended Complaint fail to state claims upon which relief can be granted. First, Wells Fargo posits that Count I is not ripe for adjudication because Wells Fargo has not filed a proof of claim.

With respect to Counts II and III concerning the Plaintiff's action under his strong arm powers, Wells Fargo cites to *In re Williams,* a recent decision in which this court dismissed a mortgage avoidance action brought by the trustee of a chapter 7 estate based on the grounds that the holder of the mortgage note had not recorded a valid assignment of the mortgage. *Noland v. Wells Fargo Bank N.A. (In re Williams),* 395 B.R. 33 (Bankr.S.D.Ohio 2008). In particular, Wells Fargo asserts that the Plaintiff cannot use those powers to avoid a duly recorded mortgage because a mortgage is not property of a mortgagor-debtor's bankruptcy estate. Wells Fargo continues and contends that, even if the Mortgage was property of the Debtors' bankruptcy estates, the Plaintiff is not a

---

**2.** Unless otherwise noted, all references to rules of court shall be to the Federal Rules of Bankruptcy Procedure ("BR") or the Federal Rules of Civil Procedure ("FRCP").

*bona fide* purchaser under Ohio law because he had constructive notice of the recorded mortgage. Finally, Wells Fargo maintains that the Ohio recording statute does not apply to mortgage assignments. Because the Plaintiff cannot avoid the Mortgage, Wells Fargo reasons that Count III regarding preserving any avoidance and recovered property for the respective bankruptcy estates is moot.

Wells Fargo contends that Count IV, seeking an order from this court "to prevent abuse of the bankruptcy process" through § 105, should be dismissed because § 105(a) does not create a private right of action and can only be used to enforce a specific provision of the Code. Wells Fargo points out that the Amended Complaint does not allege that Wells Fargo has violated any Code provision or order from this court and, therefore, § 105 is inapplicable and Count IV should be dismissed.

As to the remaining claims, Counts V and VI, requesting declaratory and injunctive relief, Wells Fargo suggests that because these claims are remedies that are not associated with any viable claims, they should also be dismissed.

Finally, Wells Fargo maintains that the class allegations fail to satisfy the requirements of FRCP 23 primarily because, according to Wells Fargo, the Plaintiff cannot fairly and adequately represent the putative class of bankruptcy trustees and therefore the requirements of FRCP 23(a)(4) are not met.[3]

## IV. *Legal Conclusions and Analysis*

### A. Summary of Legal Conclusions

The growth over the last decade of the secondary mortgage market, where residential mortgage loans are sold, securitized and often serviced by affiliates of lending institutions or independent loan servicers, has engendered numerous problems in bankruptcy courts and other courts related to the documentation of motions for relief from stays, proofs of claim, and foreclosure actions filed by the banking and mortgage industry. As a result, issues of standing to pursue a foreclosure or relief from stay action and the right to enforce notes and mortgages have been the subject of many recent writings and decisions.[4] Those very issues appear to have spawned the Plaintiff's efforts in this adversary proceeding. To wit, the Plaintiff's requests for relief set forth in his Amended Complaint can generally be categorized in two groups: a) requests to avoid real estate mortgages involving the Wells Fargo Entities related to bankruptcy cases for the proposed National Class,

---

**3.** Because the court is dismissing all the Plaintiff's claims on jurisdictional grounds or their merit s, and except as noted in footnote 18 below, issues pertaining to class certification, whether the Plaintiff is an adequate class representative, and any other issues arising under FRCP 23 are moot and the court is not determining those issues.

**4.** See *In re Stewart*, 391 B.R. 327 (Bankr. E.D.La.2008); *In re Parsley*, 384 B.R. 138 (Bankr.S.D.Tex.2008); *Nosek v. Ameriquest Mortgage Co. (In re Nosek)*, 386 B.R. 374 (Bankr.D.Mass.2008), *affirmed In part, vacated In part sub.* nom 406 B.R. 434 (D.Mass. 2009); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373 (Bankr.W.D.Pa.2008); *In re Prevo*, 394 B.R. 847 (Bankr.S.D.Tex.2008); *In re Fernando Cabrera–Mejia*, 402 B.R. 335 (Bankr.C.D.Cal.2008); *In re Schuessler*, 386 B.R. 458 (Bankr.S.D.N.Y.2008); *In re Foreclosure Cases*, 2007 WL 3232430 (N.D.Ohio 2007); *In re Foreclosure Cases*, 521 F.Supp.2d 650 (S.D.Ohio Oct.31, 2007); Katherine Porter, *Misbehavior and Mistake In Bankruptcy Mortgage Claims*, 87 Tex. L.Rev. 121 (2008) and Chris Markus, Ron Taylor & Blake Vogt, *From Main Street to Wall Street: Mortgage Loan Securitization and New Challenges Facing Foreclosure Plaintiffs In Kentucky*, 36 N. Ky. L.Rev. 395 (2009).

Multi–State Sub–Class, and the Ohio Sub–Class on account of assignments of mortgages not having been recorded for those mortgages and to recover the underlying property for those bankruptcy estates and trustees; and b) requests to enjoin and prohibit the Wells Fargo Entities from mischaracterizing who holds notes and mortgages and who has ownership interests in notes and mortgages in bankruptcy cases in which the Wells Fargo Entities file motions for relief from stay or proofs of claim.

For the reasons detailed below, the court finds that it has nationwide jurisdiction over the Plaintiff's *in personam* claims (Counts I, IV, and VI), but that it does not have *in rem* jurisdiction over the Plaintiff's attempts to avoid mortgage liens for bankruptcy cases filed or pending outside the bankruptcy court for the United States District for the Southern District of Ohio (Counts II, III, and V). Further, the Plaintiff's Amended Complaint must be dismissed as to claims involving Ohio mortgages (the proposed Ohio Sub–Class) on account of this court's decision in *Noland v. Wells Fargo Bank N.A. (In re Williams)*, 395 B.R. 33 (Bankr.S.D.Ohio 2008). Finally, while the court respects the Plaintiff's desire to hold accountable the Wells Fargo Entities for their alleged failures to name the proper parties in motions for relief from the automatic stay or in proofs of claim in the bankruptcy courts around the country, the court finds that issuance of special remedies, such as injunctive relief, declaratory relief, or an order pursuant to § 105(a) through a class action proceeding does not constitute an appropriate manner to achieve that goal. The court specifically holds that objections to motions for relief from stay and objections to proofs of claim based on lack of proper documentation supporting standing or right to pursue those actions, coupled with the pursuit of sanctions in appropri-ate cases, are the proper methods of asserting such issues. For these reasons, the court is separately entering an order dismissing the Plaintiff's Amended Complaint.

## B. Jurisdiction

■■■ The first and fundamental question presented by every case brought to the federal courts is whether the court has subject matter jurisdiction to hear the case before it, even when the parties concede or do not raise the issue. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Regardless of whether the parties raise jurisdictional issues themselves—or even attempt to consent to federal jurisdiction—federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction. *Ebrahimi v. City of Huntsville Board of Educ.*, 114 F.3d 162, 165 (11th Cir.1997) ("Federal courts have an independent obligation to police the constitutional and statutory limits on our jurisdiction."). For the reasons discussed below, the court finds that it lacks *in rem* subject matter jurisdiction as to Counts II, III and V of the Amended Complaint as to trustees whose bankruptcy cases are or were pending outside the Southern District of Ohio. However, the court concludes that it has *in rem* jurisdiction as to Counts II, III and V to the extent that such claims involve debtors' property or property of debtors' bankruptcy estates for trustees whose bankruptcy estates are or were located within this District. In addition, the court concludes that it has subject matter jurisdiction as to Counts I, IV and VI.

### 1. General Jurisdiction and Venue

This court has general subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the

standing order of reference in this District and venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (K), and (O).[5] The parties have not contested the jurisdiction of this court nor raised any issue as to the venue of this court being improper.

2. The Court Has Nationwide Jurisdiction Over Plaintiff's Claims to the Extent *In Rem* Jurisdiction Is Not Invoked Over Cases Filed or Pending Outside This District

While courts are split on the issue of whether bankruptcy courts have jurisdiction to determine nationwide debtor or trustee class actions, the court concludes that, under the facts of this adversary proceeding, it may exercise such jurisdiction. *Compare Bank United v. Manley,* 273 B.R. 229 (N.D.Ala.2001) (permitting nationwide class certification); *Sheffield, Homeside Lending, Inc. (In re Sheffield),* 281 B.R. 24 (Bankr.S.D.Ala.2000) (same; certifying nationwide class on the issue of a creditor's failure to disclose post petition but pre-confirmation attorney fees included in its proofs of claim but refusing to certify the class on the issue of reasonableness of fees because of inconsistent legal standards); *Powe v. Chrysler Fin. Corp. (In re Powe),* 278 B.R. 539 (Bankr.S.D.Ala. 2002); *Powe v. Chrysler Fin. Corp., L.L.C. (In re Powe),* 280 B.R. 728 (Bankr.S.D.Ala. 2001) (Rule 23(f) permitting interlocutory appeals of class certification orders unauthorized by statute); *Noletto v. Nationsbanc Mortgage (In re Noletto),* 244 B.R. 845 (Bankr.S.D.Ala.2000); *Dean v. First Union Mortgage Corp. (In re Harris),* 280

B.R. 876 (Bankr.S.D.Ala.2001) with *Bessette v. Avco Fin. Servs., Inc.,* 279 B.R. 442 (D.R.I.2002) (limiting class certification to debtors within district); *Cline v. First Nationwide Mortgage Corp. (In re Cline),* 282 B.R. 686 (W.D.Wash.2002) (same); *Beck v. Gold Key Lease Inc. (In re Beck),* 283 B.R. 163 (Bankr.E.D.Pa.2002); *Henry v. Associates Home Equity Servs., Inc.,* 272 B.R. 266 (C.D.Cal.2002) (same).

Section 1334 of Title 28 of the United States Code provides district courts, and in turn bankruptcy courts, with jurisdiction over bankruptcy matters. First, subsection (a) vests district courts with *original and exclusive* jurisdiction over all cases under title 11, while 28 U.S.C. § 1334(b) provides district courts with original but *not exclusive* jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under Title 11." The non-exclusive jurisdiction of subpart (b) forms the basis for district courts' abstention from certain types of proceedings under 28 U.S.C. §§ 1334(c). *Cline v. First Nationwide Mortgage Corp. (In re Cline),* 282 B.R. 686, 691 (W.D.Wash.2002) (citing 1 Collier on Bankruptcy ¶ 3.01[4] Alan N. Resnick & Henry J. Sommer eds., 15th Ed. Rev.2002). In turn, Congress has authorized district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district," commonly known as the "order of reference" for the district. 28 U.S.C. § 157(a). However, bankruptcy judges' authority over matters is narrower than that of district court judges. *Knox v. Sunstar Acceptance*

---

5. This adversary proceeding is a core proceeding because it concerns substantive bankruptcy issues which can only arise in the bankruptcy context: allowance or disallowance of claims against the estate, determination, extent and priority of liens and, and the consideration of whether Wells Fargo's actions in allegedly misrepresenting its status in motions for relief from stay constitute an abuse of the bankruptcy process. *See* 28 U.S.C. § 157(b)(2)(A), (B), (C), (K), and (O).

*Corp. (In re Knox),* 237 B.R. 687, 693 (Bankr.N.D.Ill.1999). Bankruptcy judges may only "hear and determine" all cases under title 11 and all "core proceedings" arising under title 11 or arising in a case under title 11. 28 U.S.C. § 157(b)(1). "Core proceedings" include, among other matters, matters concerning the administration of the estate, allowance or disallowance of claims against the estate, orders to turnover property of the estate, motions to terminate, annul or modify the automatic stay, and determination of the validity, extent or priority of liens. 28 U.S.C. § 157(b)(2)(A), (E), (G) & (K).

Subsection (e) of § 1334 further refines the district courts' and, derivatively, bankruptcy courts' jurisdiction in bankruptcy matters. *See In re Noletto,* 244 B.R. at 852. Subsection (e) provides in relevant part: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]" 11 U.S.C. § 1334(e).

The debate over whether bankruptcy courts have nationwide jurisdiction over debtor and trustee class action adversary proceedings in large part appears to be based upon the issue of how broadly § 1334(e) should be read in light of the other jurisdictional provisions of the Code and Title 28.[6] For the reasons discussed

below, the court finds that it has jurisdiction over some of the Plaintiff's claims as relates to the Plaintiff's proposed National Class, the Multi–States Sub–Class, and the Ohio Sub–Class as identified in the Amended Complaint, but not as to other Plaintiff's claims.

*Noletto* is one of the oft-cited decisions regarding a bankruptcy court's jurisdiction over class action proceedings.[7] In *Noletto,* the court held that a bankruptcy court had jurisdiction to grant class certification to a nationwide class action filed against a lender on behalf of the named debtor and other bankruptcy debtors across the country for abusive and persistent violations of the Code based on the lender's attempts to collect fees and charges that the plaintiffs alleged were unreasonable, unauthorized, and not permissible under the Code, even though by doing so, the court was exercising jurisdiction over claims those debtors in other districts might have against the defendants. *Noletto,* 244 B.R. at 852. After an exhaustive review of the legislative history of § 1334 and judicial precedent, the court found that § 1334(e) merely grants exclusivity to the district court in which the estate case was commenced or is pending, the "home court", to resolve *in rem* claims against estate or debtor property.[8]

In addressing the scope of § 1334(e), the *Noletto* court explained that an expansive interpretation of § 1334(e) requiring the

---

**6.** *See e.g.,* 28 U.S.C. §§ 1409(b) and (d), 1334(c) and 1452.

**7.** The *Noletto* decision has been cited with approval by courts in a number of districts and by the Sixth Circuit. See e.g., *Bank United v. Manley,* 273 B.R. 229, 247 (N.D.Ala. 2001) ("This court believes this rule represents a plausible and workable interpretation of § 1334(e)."); *Blachy v. Butcher,* 221 F.3d 896, 909 (6th Cir.2000) ("We agree with the decision in *In re Noletto* . . . and hold that a bankruptcy court can share its jurisdiction

with other courts."); *Kerney v. Capital One Financial Corp. (In re Sims),* 278 B.R. 457, 486–87 (Bankr.E.D.Tenn.2002).

**8.** *In rem* proceedings are those under which an obligation is to be enforced against a thing, or item of property, regardless of the persons involved. An *in personam* action seeks to impose an obligation on a person. In re *Noletto,* 244 B.R. at 853, n. 6 (citing Black's Law Dictionary 856–57 (7th ed.1999)).

"home court" to determine all issues regarding property of the estate would be inconsistent with the bankruptcy venue provisions of 28 U.S.C. § 1409(b) and (d)[9], would render 28 U.S.C. § 1334(c) "virtually useless," would give 28 U.S.C. § 1452 "virtually no meaning," and ultimately "would leave bankruptcy courts in gridlock." *Id.* at 852–54.[10] "[B]ased on the statutory scheme, the legislative history and the nature of bankruptcy practice, [the court concluded that] § 1334(e) is limited to giving the 'home court' exclusive jurisdiction over *in rem* matters" and, accordingly, " § 1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code." *Id.* at 854. The court noted that the efficacy of the bankruptcy process "depends on the existence of one court to control assets and distribute them in accordance with the priority scheme established by the Bankruptcy Code" and

that § 1334(e) accomplished that purpose by granting the "exclusive power to control and distribute property of the estate [to the 'home court'] without requiring it to determine the extent of property of the estate." *Id.* at 853–54. Since the claims sought to be certified on behalf of the class were not *in rem*, but instead were *in personam* claims for violations of the Code, the *Noletto* court held that it had authority to certify a class: "These proceedings seek to impose liability on various corporations for actions taken (or not taken) by them. These proceedings have nothing to do with a specific item of property held by a debtor or all debtors." *Id.* at 854.[11]

■ This court concurs that § 1334(e) must be read narrowly to limit the "home court" exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the

9. 28 U.S.C. § 1409(b) reads: "Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,100 or a consumer debt of less than $16,425, or a debt (excluding a consumer debt) against a noninsider of less than $10,950, only in the district court for the district in which the defendant resides."

28 U.S.C § 1409(d) reads: "A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought."

10. As noted previously, 28 U.S.C. § 1334(c) permits and sometimes requires a district court to abstain from hearing certain proceedings while 28 U.S.C. § 1452(a) provides for the removal of claims or causes of action related to bankruptcy cases to the district court (which may then be referred to the

bankruptcy court through the district's order of reference) and § 1452(b) provides for remand of claims or causes of action that the court has removed under subsection (a) on any equitable ground.

11. The *Noletto* court rejected other bankruptcy and district court decisions which interpret § 1334(e) more broadly to prevent a court other than the "home court" from deciding matters of an *in personam* nature. *Cline v. First Nationwide Mortgage Corp. (In re Cline),* 282 B.R. 686 (W.D.Wash.2002) (no jurisdiction exists over members of proposed class whose bankruptcy "homes" are outside representative plaintiff's district); *Williams v. Sears, Roebuck and Co. (In re Williams),* 244 B.R. 858 (S.D.Ga.2000), *aff'd without opinion* 34 Fed.Appx. 967 (11th Cir.2002) (§ 1334(e) is clear; it extends to *in personam* claims a debtor has for violation of Bankruptcy Code provisions; class actions of this type are not within the jurisdiction of the bankruptcy courts); *Cook v. Cook,* 220 B.R. 918 (Bankr. E.D.Mich.1997) (debtors who had Chapter 11 case pending in California sought to remove a state court lawsuit to a bankruptcy court in Michigan; § 1334(e) precluded debtor from doing so).

estate and not as a restriction on nation-wide jurisdiction over claims for violation of provisions of the Code, other federal statutory provisions, or other remedies that might be available to debtors and trustees. *Noletto,* 244 B.R. at 852–54. This reading is consistent with the interpretation that this and other courts have given to § 1334(e). *See e.g., In re Murray,* 350 B.R. 408, 418 (Bankr.S.D.Ohio 2006) ("[t]the district court in which the bankruptcy case is commenced obtains exclusive *in rem* jurisdiction over all of the property in the estate.") *Id., quoting Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon),* 153 F.3d 991, 996 (9th Cir.1998); *AG Indus., Inc. v. AK Steel Corp. (In re AG Indus., Inc.),* 279 B.R. 534, 539 (Bankr.S.D.Ohio 2002), *citing Landry v. Exxon Pipeline Co.,* 260 B.R. 769, 781–82 (Bankr.M.D.La.2001).[12]

■ Following *Noletto* and its progeny, the court finds that with respect to the class action aspects of the Amended Complaint, it has jurisdiction over Counts I, IV and VI on account of those claims seeking *in personam* relief for alleged systematic abuses of the bankruptcy process on a national basis. Count I seeking disallowance of Wells Fargo's claim, Count IV seeking an order from this court to prevent abuses of the bankruptcy process by the Wells Fargo Entities, and Count VI seeking an order from this court enjoining the Wells Fargo Entities from making various misrepresentations do not concern a specific item of property of an estate ad-

ministered by the Plaintiff or by trustees for bankruptcy cases filed in other districts. They merely seek to impose liability on Wells Fargo or the Wells Fargo Entities for the actions they took or failed to take. Thus, those Counts of the Amended Complaint are *in personam* claims and fall within this court's jurisdiction.

3. The Court Does Not Have Jurisdiction Over Plaintiff's Claims to the Extent *In Rem* Jurisdiction Is Invoked Over Cases Filed Outside This District

■ Conversely, the court finds that it lacks jurisdiction over Counts II, III, and V of the Amended Complaint with respect to debtors' cases that were not filed in the Southern District of Ohio. Count II seeks to avoid mortgage liens for which there are no recorded assignments, Count III seeks to preserve any recovered property for the benefit of the estates, and Count V seeks a declaratory judgment that the Plaintiff and the other proposed trustee class members are entitled to avoid or subordinate any mortgage in connection with which the holder of the note did not record an assignment. These Counts directly target "ownership of, or rights in and to, property of the estate," and are therefore *in rem* claims. *AG Indus.,* 279 B.R. at 539. Jurisdiction over these claims lies solely in the district court where each estate case has been commenced or is pending. 28 U.S.C. § 1334(e); *Noletto,* 244 B.R. at

**12.** In *Landry* the court stated: "While at first blush it might appear that if an action involves property of the estate, a federal forum ... is the only proper forum for adjudication of claims to such property, 28 U.S.C. § 1334(e) more properly denotes a grant by Congress of *in rem* jurisdiction over property of the debtor as of the commencement of the case and over property of the estate. Section 1334(e) must be harmonized with the provisions of § 1334(b) granting non-exclusive ju-

risdiction over matters 'arising under,' 'arising in,' and 'related to' bankruptcy and/or bankruptcies. An action, *in personam,* that seeks to establish personal liability of the debtor on a claim, but which is not specifically targeted to ownership of, or rights in and to, property of the estate does not fall within this subsection." *Landry v. Exxon Pipeline Co.,* 260 B.R. 769, 781–82 (Bankr.M.D.La. 2001).

853–54; *see also Kerney v. Capital One Financial Corp. (In re Sims),* 278 B.R. 457, 486–87 (Bankr.E.D.Tenn.2002); *AG Indus.,* 279 B.R. at 539. Therefore, while this court may exercise jurisdiction over claims related to trustees whose bankruptcy estates were filed within this District, it lacks jurisdiction to determine claims related to trustees whose cases were filed outside this District. Thus, the court dismisses the class action allegations in connection with Counts II, III and V as they relate to trustees whose bankruptcy cases were filed outside this District. *See* 28 U.S.C. §§ 1334(b) & (e) and 157.

Application of 28 U.S.C. § 1334(e) to prohibit this court's exercise of jurisdiction over estate property or debtors' property for cases filed in districts other than the Southern District of Ohio is supported by the law. It also results in maintaining harmony in the bankruptcy universe. This court's exercise of jurisdiction over assets of debtors or bankruptcy estates for debtors whose cases were filed in other districts would raise numerous issues and generate considerable confusion and uncertainty. Courts in the jurisdictions where those cases were filed are in a significantly better position to determine the applicable law regarding the perfection of liens on real estate for those cases. Assuming the validity of the Plaintiff's substantive arguments concerning his ability to avoid underlying mortgages for which assignments of mortgages were not recorded or timely recorded, the Plaintiff's allegations concerning avoidance of mortgages on a nationwide basis would ensnare this court in the administration of potentially thousands of Chapter 7 cases filed outside this District. It would appear that Congress intended to avoid these issues concerning nationwide jurisdiction over property interests by choosing to provide *in rem* jurisdiction exclusively to the "home court" in 28 U.S.C. § 1334(e).

## C. The Merits of Plaintiff's Claims: All of Plaintiff's Claims Fail to State a Claim for which Relief Can be Granted and Must Be Dismissed

### 1. Legal Standard for Determining Motions to Dismiss

Wells Fargo requests dismissal of the Amended Complaint under FRCP 12(b)(6), incorporated in bankruptcy adversary proceedings by BR 7012. FRCP 12(b)(6) provides that a party may assert the defense of "failure to state a claim upon which relief may be granted" by motion.

In determining a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir.2008), *quoting DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007). However, in determining such a motion, a court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

The Supreme Court recently clarified the law concerning what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Under the standard established by *Bell Atlantic Corp. v. Twombly,* the Supreme Court had instructed lower courts to dismiss claims not supported by factual allegations sufficient to "state a claim to relief that is *plausible* on its face." 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added). Some courts interpreted *Twombly* to only apply in anti-

trust cases and other courts found that *Twombly's* pleading requirements could be overcome with a mere assertion of a defendant's responsibility. *Iqbal* makes clear that *Twombly* is not so limited and buttresses the *Twombly* plausibility standard. In *Iqbal,* quoting *Twombly,* the Supreme Court held that Rule 8(a) requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (internal citations omitted). Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* According to the Court, deciding the adequacy of a complaint requires a two-step analysis. First, a court should identify and reject legal conclusions unsupported by factual allegations, because conclusions masquerading as allegations "are not entitled to the assumption of truth." *Id.* at 1950. Insufficient are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements", "labels and conclusions", and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949. In sum, a complaint that alleges that a defendant caused a plaintiff's injury, without explaining how, does not meet the requirements of Rule 8(a) and therefore cannot survive a Rule 12(b)(6) motion. Second, a court should assume the veracity of "well-pleaded factual allegations" and should conduct a "context-specific" analysis that "draw[s] on [the court's] judicial experience and common sense" to determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* at 1950. Well-pleaded facts that "do not permit the court to infer more than the mere possibility of misconduct" are insufficient to show that plaintiff is entitled to relief. *Id.*

2. Count I Seeking Declaratory Relief Disallowing Wells Fargo's Claim Does Not Present a Case or Controversy for the Court to Determine and Otherwise Is Not Appropriate for Declaratory Relief under the Circumstances of this Adversary Proceeding

■ Because the court is dismissing the Plaintiff's remaining claims and for the reasons that follow, the court finds that there is no case or controversy to determine under Count I. In addition, based upon Sixth Circuit law, issuing declaratory relief with respect to Count I would not be appropriate under the circumstances of this adversary proceeding.

Through Count I the Plaintiff requests a declaratory judgment that "[a]s a result of the Defendants' failure to own or hold the Note on the Krause Real Property, Plaintiff is entitled to a judgment pursuant to 11 U.S.C. §§ 501, 502 and 506 that the Wells Fargo Entities and/or the W/E Defendants are not a creditor or a secured creditor of the bankruptcy estate and does not hold a claim against the debtor's bankruptcy estate." Amended Complaint, ¶ 48.

■■ Wells Fargo contends that "because Wells Fargo has not filed a proof of claim in the bankruptcy proceeding, there is no issue before the Court under §§ 501, 502 or 506, and Count I must be dismissed." Defendants' *Memorandum in Support of Motion to Dismiss,* p. 5 (Adv. Doc.33). Wells Fargo argues further that:

Here, Wells Fargo has not filed a proof of claim. Because a creditor in a chapter 7 proceeding cannot have an allowed claim unless and until a proof of claim is filed, there is simply no issue before the Court regarding the "allowed claim" status of any claim that Wells Fargo might file in the future under 11 U.S.C. §§ 501, 502 or 506. Moreover, because Wells Fargo has not filed a proof of

claim, any dispute over what claim it could or might file is simply not ripe for adjudication, and, as a consequence, not a dispute over which this Court has jurisdiction. Count I of the Complaint must be dismissed.

Defendants' *Memorandum in Support of Motion to Dismiss,* p. 6 (Adv.Doc.33). In response, the Plaintiff asserts that:

> Wells Fargo did not hold or own the note on the Petition Date and is, therefore, not a creditor of the estate. Plaintiff seeks a determination, pursuant to 11 U.S.C. §§ 501, 502 and 506, of allowed claim status and a declaration that any lien claimed by Defendants against the Property is void because Defendants do not have an allowed claim. [footnote 3 omitted] Wells Fargo argues in its Motion to Dismiss that Count I is not ripe for adjudication because it has not filed a proof of claim. Wells Fargo ignores

the common law doctrine of informal proof of claims. Wells Fargo's Motion for Relief from Stay constitutes a claim under this doctrine.

*Plaintiff's Response In Opposition To Defendant Wells Fargo Bank, N.A.'s Motion To Dismiss Amended Complaint,* pp. 4–5 (Adv.Doc.39). Attempting to distinguish this adversary proceeding from this court's decision in *Williams,* the Plaintiff states that: "Here, Plaintiff's claims under §§ 105, 501, 502, and 506 are based in significant part upon Plaintiff's allegation that Wells Fargo did not hold the note and was not even a creditor (secured or unsecured) on the Petition Date. This is an independent basis for Plaintiff's claims that was not resolved by the Court in *Williams.*" *Plaintiff's Response In Opposition To Defendant Wells Fargo Bank, N.A.'S Motion To Dismiss Amended Complaint,* p. 4, fn. 3 (Adv.Doc.39).[13]

**13.** With respect to Count I, the Plaintiff and Wells Fargo argued about the fact that Wells Fargo has not filed a proof of claim in the Debtors' case and the implications of Wells Fargo not having filed a proof of claim, including the Plaintiff having argued that Wells Fargo should be deemed to have filed a proof of claim as a result of having filed the *Stay Motion* under the "informal proof of claim" theory. However, the court does not believe that whether Wells Fargo filed a proof of claim or is deemed to have filed a proof of claim is relevant or significant to determination of Count I or the remainder of the *Amended Complaint.* Whether Wells Fargo has or had a claim against the Debtors or the Debtors' bankruptcy estates depends upon: a) whether Wells Fargo was entitled to enforce the Note and Mortgage at the pertinent time (*See In re Wells,* 407 B.R. 873 (Bankr. N.D.Ohio 2009)); and b) whether that that claim is secured or unsecured. Rather, if this court found that Count I presented a case or controversy for which declaratory judgment would be appropriate, determination of the issues raised by Count I would simply require an analysis of very basic terms provided by the Code, including: "creditor", "secured creditor", "claim", and "estate"; a corre-

sponding analysis of the Federal Rules of Bankruptcy Procedure pertaining to the filing and allowance of claims in a Chapter 7 bankruptcy case; and, a factual determination of who held the claim evidenced by the Note and Mortgage (See Wells and footnote 22 below). Whether Wells Fargo or any other entity filed a proof of claim only makes a difference as to whether that entity can participate in any distribution by the Plaintiff under § 726. Note that BR 3002(a) only provides that "an unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed" There is no requirement that a creditor, particularly a secured creditor, file a proof of claim to be a "creditor" of the Debtors. In fact, a secured creditor in a chapter 7 case need not file a proof of claim unless it wants to preserve the opportunity for a distribution on any unsecured deficiency, because liens remain unaffected by bankruptcy proceedings absent specific alteration by the court. *See Dewsnup v. Timm,* 502 U.S. 410, 417–18, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *In re Fink,* 366 B.R. 870, 879 (Bankr.N.D.Ind.2007); see also BR 3002 Advisory Committee Note (1983) (secured claim need not be filed); *Womack Lumber Co., Inc. v. Guaranty Mortgage Co. (In*

█ Article III of the United States Constitution limits the jurisdiction of federal courts to consideration of actual cases and controversies. *Adcock v. Firestone Tire and Rubber Co.,* 822 F.2d 623, 627 (6th Cir.1987); *Resnick v. Patton,* 258 Fed.Appx. 789, 792–93 (6th Cir.2007). Accordingly, federal courts are not permitted to render advisory opinions. *Id.* As the Sixth Circuit concluded in *Resnick v. Patton,* if "the parties no longer have a legally cognizable interest in the outcome of the case" and "[t]he granting of a declaratory judgment in favor of the plaintiff would have no impact upon the legal interests of the parties," then there is no case or controversy under Article III of the Constitution. *Resnick* 258 Fed.Appx. at 793. *See also Parma, Ohio v. Cingular Wireless, LLC,* 278 Fed.Appx. 636, 641–42 (6th Cir. 2008). Such is the case here with the granting of the Motion to Dismiss Counts II through VI. Because those Counts are dismissed, a case or controversy no longer exists and issuance of a declaratory judgment based upon Count I would be equivalent to rendering an advisory opinion. Determining whether Wells Fargo is a creditor or a secured creditor of the Debtors or whether it has an "allowed" claim would not further the parties' remaining legal interests, would not result in the avoidance of the Mortgage, since the only basis alleged for avoiding the Mortgage is the failure to record an assignment, a claim that the court is dismissing, and would not serve as a predicate for the issuance of an injunction or an order under § 105(a) or any other relief because the court finds that relief improper as a matter of law. Since Wells Fargo has not filed a proof of claim and has purposefully chosen not to participate in any distribution that the Plaintiff may make to unsecured creditors, no need exists to determine whether it has an "allowed" claim. *See* § 726 and BR 3002(a). Accordingly, with the dismissal of Counts II through VI, there no longer remains a case or controversy to determine through the declaratory relief sought in Count I.

█ In addition, rendering such a declaratory judgment would not be proper under Sixth Circuit law. The Sixth Circuit has adopted a five-factor test for determining whether to exercise jurisdiction over a request for declaratory judgment. *United States Fire Ins. Co. v. Albex Aluminum, Inc.,* 161 Fed.Appx. 562, 564 (6th Cir.2006), citing *Grand Trunk Western R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984). The five factors are:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Id. See also Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546 (6th Cir.2008).

Applying these five factors, the court concludes that granting declaratory relief on Count I would not be appropriate.

re Bain*), 527 F.2d 681, 686 (6th Cir.1975) ("[A] secured creditor need not file proof of claim in order to rely upon and to enforce his mortgage"). Accordingly, Wells Fargo's failure to file a proof of claim and whether the *Stay Motion* constitutes an informal proof of claim are "red herrings" since the issues involved in this adversary proceeding do not include whether Wells Fargo should receive a distribution from the Plaintiff.

First, determining whether Wells Fargo held a claim or a secured claim against the Debtors would serve no purpose given the dismissal of the remaining Counts of the Amended Complaint. Absent the Plaintiff being able to obtain relief on Counts II through VI, declaring whether Wells Fargo is a creditor of the Debtors is of no consequence.[14] Thus, the first two factors support the denial of any declaratory relief. The court further finds that the declaratory relief request has not been raised for the improper purposes described in the third factor, nor would issuing such relief improperly interfere with state jurisdiction—the fourth factor. Perhaps of most significance to this adversary proceeding is the fifth factor set forth in the *Grand Trunk* analysis—whether a better or more effective alternative remedy exists. The better remedy in this proceeding to obtain a determination of the status of Wells Fargo as a secured creditor and the appropriate party to pursue relief from the automatic stay of § 362(a) would have been to object to the Stay Motion or to seek to vacate any order granting stay relief pursuant to BR 9024. *See* footnote 22 below. Further, should Wells Fargo later file a proof of claim, the Plaintiff will have the opportunity to object to the proof of claim if he believes that Wells Fargo is not the appropriate party to pursue that claim. *See* footnote 22 below.[15] Finally, sanctions

are available under BR 9011 and § 105(a) to any party in interest who believes that Wells Fargo or any other entity has improperly filed a motion for relief from the stay or a proof claim in violation of the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of this court, or the orders of this court.

For these reasons, the court is dismissing Count I of the Amended Complaint.

3. Based Upon the Court's Decision in *Williams*, Counts II, III, and V of the Amended Complaint are Dismissed As to the Proposed Ohio Sub–Class

In addition to dismissing Counts II, III and V of the Amended Complaint for lack of *in rem* subject matter jurisdiction over cases filed outside this district, those Counts are also dismissed to the extent they seek to avoid of mortgages pertaining the proposed Ohio Sub–Class based upon this court's decision in *Williams*. Those Counts seek to avoid mortgages pursuant to a bankruptcy trustee's strong-arm powers under Code § 544 in situations "where the holder of the note failed to properly record an instrument of assignment in the proper governmental recording office" (Amended Complaint, ¶¶ 58 & 71(h)) and seek recovery of any

---

**14.** The only basis that the Plaintiff has asserted for avoiding any lien alleged to be held by Wells Fargo is that an assignment of the Mortgage was not recorded. See Amended Complaint, Counts II (¶¶ 55–58), III, and V (¶ 71). Since these Counts are being dismissed as relates to the Debtors on account of the court's decision in *Williams*, there is no need for the court to make any declarations under either Count I or Count V as to whether Wells Fargo is a creditor of the Debtors.

**15.** If the Plaintiff had some basis to avoid the Mortgage or any lien which Wells Fargo might claim on property of the Debtors' bankruptcy estates other than failure to record an

assignment of the Mortgage, then there would be a basis for this court's determination of the issue of who holds the right to enforce the Note and Mortgage irrespective of whether Wells Fargo has filed a proof of claim in the Debtors' bankruptcy case. However, absent a genuine dispute between competing parties arguing as to the right to enforce the Note and Mortgage or the Plaintiff's ability to avoid the Mortgage lien and proceed against the Property, there is no reason for this court to declare whether Wells Fargo is a creditor or a secured creditor or has the right to enforce the Note and Mortgage.

such avoided transfers for the benefit of the respective proposed class members.

Subsequent to the Plaintiff's filing of this adversary proceeding, this court issued the *Williams* decision rejecting the Plaintiff's theory that he could avoid a mortgage based on his avoidance powers under § 544(a)(3) as a hypothetical *bona fide* purchaser or real property because the mortgage was not assigned to the entity holding the note secured by the mortgage or because the assignment of the mortgage was not recorded.[16] *Noland v. Wells Fargo Bank N.A. (In re Williams)*, 395 B.R. 33 (Bankr.S.D.Ohio 2008). This court ruled that while Ohio law requires a mortgage assignment to be recorded, *see* ORC § 5301.25(A), the effect of a subsequent note or mortgage holder's failure to record an assignment of the mortgage does not void a duly recorded original mortgage and the recorded mortgage gives constructive notice of the mortgage such that a trustee cannot attain the status of a *bona fide* purchaser. *Id.* at 40–46.

This court added that a duly recorded mortgage which has not been released is not, in any event, property of a debtor-mortgagor's estate and therefore cannot be avoided.[17] *Id.* at 46–47. The Plaintiff's allegations in Count II in this adversary proceeding as relates to the Ohio Sub-Class are the same as those ruled upon in *Williams*. The Plaintiff has not provided the court with any new argument or distinguishing facts which change the court's conclusions.

Therefore, based on the *Williams* decision and for the reasons articulated in *Williams*, the Plaintiff's Count II under § 544 and the associated remedies set forth in Count III under §§ 551 and 554 and Count V are dismissed.[18]

### 4. The Plaintiff Has Failed to State a Claim Under § 105(a) and, Therefore, Count IV Is Dismissed

▮ Relying on § 105(a), Count IV requests "an order, process or judgment

---

**16.** In *Noland v. Wells Fargo Bank N.A. (In re Williams)*, Adv. No. 08–3079, the Chapter 7 trustee filed an adversary proceeding against Wells Fargo seeking to avoid a mortgage for failure to record an assignment of the mortgage. The plaintiff trustee in that case also sought the disallowance of Wells Fargo's claim pursuant to § 502(b), (d) and (j) on the basis of his avoidance of the mortgage. In addition, in subsequent memoranda, the plaintiff trustee also asserted that the alleged misconduct of Wells Fargo in misrepresenting its ownership of notes or mortgages in relief from stay motions warranted disallowance of its claim.

**17.** The plaintiff in the *Williams* case has appealed the *Williams* Decision (Adv.Doc.25) to the United States District Court for the Southern District of Ohio (Adv.Doc.31), which appeal is pending at the time of the issuance of this decision.

**18.** In the event there are prospective members of any class proposed by the Plaintiff that have a case filed in this district for which there is a mortgage on real property located

outside Ohio, this court finds that the Plaintiff would not be an appropriate plaintiff's representative to pursue avoidance of any such mortgage and that class certification for such case or cases would not be appropriate. The Chapter 7 panel trustee for that particular case can make such determination on her own and pursue that relief should she deem it appropriate. In such circumstances, the court finds that certification of a class for that purpose would not be appropriate under FRCP 23(a) or (b) since those issues could be litigated economically without any threat of inconsistent judgments by the individual trustees for those cases, if in fact any such cases did exist. It is likely that all or virtually all of the cases filed in this district, to the extent mortgages are involved, involve mortgages on Ohio real property and, therefore, that certification of a class of trustees presiding over cases in this district involving mortgages on non-Ohio real property for which a Wells Fargo entity has been a participant would not be justifiable under FRCP 23(a) or (b).

from the court necessary to carry out and enforce the requirements of the Bankruptcy Code and Rules against [Wells Fargo], and to prevent further abuse of the bankruptcy process by [Wells Fargo]." Amended Complaint, ¶ 67.

 Section 105(a) provides that: The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). It is well-established law in this Circuit that while § 105(a) confers on bankruptcy courts broad equitable powers, these powers are not without limitation and may not be used to circumvent the Bankruptcy Code. *French v. Am. General Fin. Servs. (In re French)*, 401 B.R. 295, 313 (Bankr.E.D.Tenn.2009). The language of § 105(a) does not confer on "courts ... broad remedial powers." *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir.2000). The first sentence of § 105 refers to the court's authority "to carry out the provisions of this title." 11 U.S.C. § 105(a). "The provisions of this title simply denote a set of remedies fixed by Congress [and] a court cannot legislate to add to them." *Pertuso*, 233 F.3d at 423, *quoting Matter of Kelvin Pub., Inc.*, 1995 WL 734481, *4 (6th Cir.1995) (unpublished) (internal quotations omitted). Section 105 does not itself create a private

right of action, but may be invoked to preserve a right elsewhere in the Code. *Id.; Yancey v. Citifinancial Inc. (In re Yancey)*, 301 B.R. 861, 868 (Bankr. W.D.Tenn.2003). "Section 105(a) of the Code provides the bankruptcy court broad authority to exercise its equitable powers—where necessary and appropriate to facilitate the implementation of other Bankruptcy Code provisions." *Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43 (1st Cir.2008) (internal quotations omitted). Thus, while § 105(a) vests bankruptcy courts with inherent power to sanction parties for improper conduct, it "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law." *Pertuso*, 233 F.3d at 423, fn. 1, *quoting United Sates v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986).[19]

Bankruptcy courts have used their authority to impose contempt sanctions pursuant to § 105 in a variety of circumstances. *Hardy v. U.S. (In re Hardy)*, 97 F.3d 1384, 1389–90 (11th Cir.1996) (holding that "Section 105 grants statutory contempt powers in the bankruptcy context" that may be used to award "monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary and appropriate' to carry out the provisions of the Bankruptcy Code"); *In re Latanowich*, 207 B.R. 326, 333 (Bankr.D.Mass.1997) (using § 105(a) to hold the creditor in contempt to enforce the court's discharge of a debt where the creditor had deliberately attempted to collect a prepetition debt in disregard of the discharge order). Section 105 also enables courts to issue orders necessary to protect

19. This court notes that other circuits have read § 105(a) more broadly to permit enforcement of all the substantive rights created by the Code and the Rules. *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 457–58 (Bankr.S.D.Tex. 2008); *Bessette v. Avco Financial Servs., Inc.*, 230 F.3d 439 (1st Cir.2000). However, these precedents are not binding on this court and more importantly, the Sixth Circuit has rejected Bessette.

estate property subject to bankruptcy proceedings. *See, e.g., Green v. Drexler (In re Feit & Drexler, Inc.),* 760 F.2d 406, 411, 414–15 (2nd Cir.1985) (holding that a court had the power, pursuant to § 105(a), to compel a defendant to deliver her property, which was the subject of a bankruptcy proceeding, from outside the court's territorial jurisdiction); *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.),* 156 B.R. 414, 436 (S.D.N.Y.1993) (utilizing § 105(a) to enjoin claimants from asserting claims that were the property of an estate in a bankruptcy proceeding).

Still, "[w]hile it is easy to engage in an analysis to justify the court's taking perceived remedial action, the first inquiry must be whether there is already a congressionally-created remedy in existence for the alleged wrong. If so, then *Pertuso* should force the Court to ask why it should entertain a judicially-created remedy." *Yancey,* 301 B.R. at 869.

This Circuit's interpretation of § 105(a) leaves no doubt that Count IV must be dismissed because (i) it cannot serve as an independent basis for relief; and (ii) it cannot be used as a basis to issue an "obey the law" injunction.

In this instance, the Plaintiff does not allege that Wells Fargo has violated any specific provision of the Code or order of this court. The Plaintiff merely asserts that Wells Fargo has engaged in bad faith conduct that has abused the judicial process by filing inaccurate motions and pleadings. See Amended Complaint, ¶¶ 62–67. The Plaintiff insists that his § 105 claim is an independent claim unrelated to the other claims in the Amended Complaint. His prayer for relief replicates for the most part the language of

§ 105(a) by combining the two sentences composing that section. It reads as follows:

> Pursuant to 11 U.S.C. § 105, the Trustee seeks an order, process or judgment from the court necessary to carry out and enforce the provisions of the Bankruptcy Code and Rules against Defendants, and to prevent further abuse of the bankruptcy process.

Amended Complaint, ¶ 67. Under those circumstances, § 105(a) alone, cannot serve as a basis for relief. Count IV fails to correlate § 105 with any authority within the Code as required by the Sixth Circuit in *Pertuso.* Further, as will be discussed below, Congress has provided remedies for the alleged wrong asserted by the Plaintiff, obviating the potential need to create a private right of action. *Yancey,* 301 B.R. at 869.

Since Count IV attempts to create a private right of action based on § 105(a) alone, Count IV must be dismissed.[20]

In his *Response* to the Motion to Dismiss, the Plaintiff claims that he is also seeking to protect property of the estate through the § 105(a) claim. These allegations, however, fall short of providing a sufficient basis to grant the relief sought by the Plaintiff. First, while the Plaintiff accurately states that § 105(a) grants courts the power to protect property of the estate for the benefit of creditors, none of the cases he cites stand for the proposition that § 105(a) alone can form the basis of a cause of action. To the contrary, in all those cases, § 105(a) is tethered to another code provision and serves merely as a vehicle to carry out such provision. *See e.g., Campbell v. Cathcart (In re Derivium Capital, LLC),* 380 B.R. 429, 444 (Bankr.

---

**20.** The court need not discuss whether a private right of action can be implied pursuant to § 105(a) as the Plaintiff insists that Count IV stands alone and is not linked to any Code provision.

D.S.C.2006) (the § 105(a) claim that the court refused to dismiss was linked to the trustee's claim under § 542); *In re Lykes Bros. S.S. Co., Inc.,* 191 B.R. 935, 936 (Bankr.M.D.Fla.1995) (§ 105(a) used to further the provisions of § 362(a)); *In re Burkhart,* 2006 WL 3859237, at *3 (Bankr. E.D.Pa. Nov.16, 2006) (§ 105(a) used to permit a chapter 7 trustee to hold proceeds from a sale of the debtor's property approved by the court in escrow pending determination of who the rightful owners of the funds were).

Further, property of the estate is not at issue in this proceeding. The Plaintiff's only basis to avoid the Mortgage and the mortgages of prospective class members is the failure to record an assignment. As the court noted above, this court does not have *in rem* subject matter jurisdiction over properties involved in cases outside this District. As to Ohio mortgages, and the proposed Ohio Sub–Class, this court has emphasized in *Williams* that, after an original grant by a mortgagor to a mortgagee has been properly perfected, the mortgagee's subsequent assignment of a mortgage does not constitute a transfer of the debtor-mortgagor's property. *Williams,* 395 B.R. at 46; *see also Kapila v. Atlantic Mortgage and Inv. Corp. (In re Halabi),* 184 F.3d 1335, 1337 (11th Cir. 1999); *Rogan v. Bank One, N.A. (In re Cook),* 457 F.3d 561, 568 (6th Cir.2006). In this proceeding the Plaintiff has not alleged that the original mortgage was improperly recorded. As in *Williams,* the Plaintiff merely contends that the failure to record an assignment of mortgage invalidates a mortgage, which this court refuted in *Williams.* Accordingly, based on *Cook* and *Williams,* there is no property of the estate to protect and § 105(a) cannot again serve as a basis for relief.

Even if any property at issue were property of the estate, the Code provides the Plaintiff with specific statutory bases to protect that property. The Plaintiff can move to enforce the stay or can object to a motion for relief from stay, actions that he failed to take in the Debtors' case. Further, pursuant to § 554, the Property remains property of the Debtors' bankruptcy estates until it is abandoned voluntarily by the Plaintiff, or upon the closing of the case. *See* 11 U.S.C. § 554. Accordingly, because property of the estate is not at issue and even if it were, the Code provides the Plaintiff's rights and remedies for protecting his or the prospective class members' interests in such property, the Plaintiff cannot avail himself of § 105(a) to circumvent these provisions.

■■■ Last but not least, Count IV appears to be akin to what courts have labeled "obey the law" injunctions. *See Truebro Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.),* 311 B.R. 551, 563, n. 22 (Bankr.C.D.Cal.2004). The court cannot issue such an injunction. Requests for injunctions that command parties to obey the law are improper and unnecessary. *Id. See also Elend v. Basham,* 471 F.3d 1199, 1209 (11th Cir.2006) and *Burton v. City of Belle Glade,* 178 F.3d 1175, 1200–01 (11th Cir.1999). This type of injunction violates FRCP 65(d)(1) mandating that "every order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not be reference to the complaint of other document, the act or acts sought to be restrained." *Burton,* 178 F.3d at 1200. The Eighth Circuit has discussed in detail the purpose of FRCP 65(a):

> [I]t is basic to the intent of Rule 65(d) that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits. Rule 65(d)'s specificity

requirement is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, to avoid the possible founding of contempt citations on an order that is too vague to be understood, and to ascertain that the appellate court knows precisely what it is reviewing.

*Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,* 824 F.2d 665, 669 (8th Cir.1987) (internal citations omitted). The generic language of the order sought by the Plaintiff fails to target any specific conduct or practices.

The difficulty in enforcing generic "obey the law" injunctions constitutes one of the problems posed by these orders. Issuing such an injunction would thrust this court into determining whether Wells Fargo has violated the injunction in any given case across the country, an unnecessary task likely to consume an extraordinary amount of this court's resources. The bankruptcy judge presiding over the particular case involving any alleged filing impropriety committed by one of the Wells Fargo Entities is in the best position to determine whether any improper filing or conduct occurred and to take any corrective action against the entity or its legal counsel.

This court acknowledges that several courts within and outside this Circuit have found that allegations concerning abuses of the bankruptcy process by mortgage lenders which request sanctions pursuant to § 105(a) may state valid claims for relief. *See e.g., Walton v. Countrywide Home Loans, Inc.,* 2009 WL 1905035 (S.D.Fla. June 9, 2009) and *McDermott v. Countrywide Home Loans (In re O'Neal),* Adv. No. 08–5031, Doc. 84 (Bankr.N.D.Ohio May 1, 2009) (unreported).[21] However, the procedural posture and factual background of each of those proceedings differ significantly from this adversary proceeding.

First, in both *McDermott* and *Walton,* as noted by Wells Fargo, the United States Trustee (the "UST"), as opposed to a trustee appointed pursuant to Chapter 7 of the Code (a "panel trustee"), initiated the adversary proceeding. The powers of a UST pursuant to § 307 are broader than those of a panel trustee. *Compare* 11 U.S.C. §§ 307 with 704. "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ." 11 U.S.C. § 307. The United States Trustee and Assistant United States Trustees "are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings." *United Artists Theatre Co. v. Walton,* 315 F.3d 217, 225 (3rd Cir.2003), *citing In re Columbia Gas Sys. Inc.,* 33 F.3d 294, 295–96 (3d Cir.1994); *accord In re Revco Drug Stores, Inc.,* 898 F.2d 498, 499–500 (6th

**21.** In *Walton,* the United States Trustee (the "UST") alleged that Countrywide had filed relief from stay motions that contained false representations, had initiated a foreclosure action against the debtors in violation of their confirmed Chapter 13 plan and the order for discharge, and that Countrywide's misrepresentations were part of a pattern of conduct. *Walton v. Countrywide Home Loans, Inc.,* 2009 WL 1905035, at *1 (S.D.Fla. June 9, 2009). In *McDermott,* the UST alleged that Countrywide had filed a proof of claim indicating that it held a claim secured by the Chapter 13 debtors' residence and an objec-

tion to confirmation of their plan despite having agreed to the prepetition short sale of the residence and having received a short sale pay off in "full satisfaction" of the loan. *Fokkena v. Countrywide Home Loans, Inc., Complaint for Injunctive Relief and Sanctions,* Adv. No. 07–3051, Doc. 35, ¶¶ 10–14 (Bankr. N.D.Ohio Feb. 28, 2008). In both cases, the UST initiated an adversary proceeding alleging abusive practices in those cases as well as other cases around the country by Countrywide and requested monetary sanctions and injunctive relief based on § 105(a).

Cir.1990). Specifically, United States Trustees "serve as enforcers of the bankruptcy laws by bringing proceedings in the bankruptcy courts in particular cases in which a particular action taken or proposed to be taken deviates from the standards established by the bankruptcy code." H.R.Rep. No. 95–598 at 109 (1977) *reprinted* in 1978 U.S.Code Cong. & Admin News 5963, 6070. By contrast, a panel trustee represents the interest of the bankruptcy estate and of the creditors in one particular case and not all the bankruptcy cases in the United States where lenders or their predecessors or successors in interest have filed motions for relief from stay or proofs of claim. *See* § 704 (Duties of trustee).

This court has found no legal authority for the proposition that a panel trustee may take it upon himself to police the bankruptcy system and seek sanctions for the alleged abuse of the bankruptcy process on a nationwide basis. The Plaintiff, in a footnote, cites cases he argues stand for the proposition that no reason exists to treat a panel trustee differently than a United States Trustee. *In re Kloian*, 137 Fed.Appx. 780, 782 (6th Cir.2005). However, in ruling that a panel trustee had standing to seek dismissal of the untimely appeal by a debtor of the appointment of a guardian for such debtor by the bankruptcy court, the *Kloian* court emphasized the fact that its holding was context specific: "What authority exists supports treating [the United States Trustee and the panel trustee] as equivalent *in this context*." *Id.* (emphasis added). This court is not prepared to extend this limited holding and read *Kloian* as standing for the proposition that the powers of panel trustees parallel those of United States Trustees in all situations.

Second, in McDermott, the UST sought sanctions for contempt of court, a remedy which by its very nature implies violation of a court order. The UST sought to assert sanctions for violation of Local Bankruptcy Rule 2090(c)(2) of the Northern District of Ohio. As noted before, the Plaintiff has pointed to no court order, rule, or statute that has been violated in this case and does not even seek sanctions for violation of any order or local or national rule of procedure. Rather, he merely seeks an "obey the law" injunction.

Third, Sixth Circuit decisions bind this court. This court reads the Sixth Circuit pronouncement in *Pertuso* as unambiguously prohibiting the type of § 105(a) claim brought by the Plaintiff.

Accordingly, the Plaintiff's allegations of Count IV do not give rise to an entitlement to relief and Count IV is **dismissed.**

5. The Plaintiff is not Entitled to Injunctive Relief and Count VI is Dismissed

 Count VI seeking injunctive relief fails to state a claim for which relief can be granted because as a matter of law he cannot establish irreparable harm or lack of an adequate remedy at law, both prerequisites to the granting of an injunction.

 To obtain an injunction, the party seeking injunctive relief generally must show that there is no other adequate remedy at law. *U.S. v. Miami University*, 294 F.3d 797, 816 (6th Cir.2002); *see also Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–20, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.") (citations omitted). The Plaintiff asserts that he and the prospective class members have no adequate remedy at law to deter Wells Fargo or the Wells Fargo Entities from continuing to misrepresent

their status and file inaccurate relief motions. The Plaintiff's conclusions are misguided.

The Plaintiff's and prospective class members' primary remedy for the Wells Fargo Entities' alleged misrepresentations and inaccuracies as to their legal standing to file motions for relief from stay or proofs of claim is to object to the offending motion or proof of claim. Assuming *arguendo* that Wells Fargo does not hold the particular note or otherwise have standing to pursue the motion for relief from the stay or proof of claim, the Plaintiff and any of the respective class members can object to the motion or proof of claim on the basis of lack of standing or failure to name the real party in interest, as may be appropriate, as has been done on numerous occasions across the country.[22] In this case, the Plaintiff failed to exercise that remedy.

Furthermore, in the event that the Plaintiff or any prospective class member believed that Wells Fargo's or any of the Wells Fargo Entities' alleged repeated misrepresentations in the Stay Motion warranted sanctions, BR 9011 and § 105(a) provide appropriate remedies.[23] *See e.g. Nosek v. Ameriquest Mortgage Company (In re Nosek)*, 386 B.R. 374 (Bankr.

D.Mass.2008), *Aff'd in part, vac'd in part sub. nom* 406 B.R. 434 (D.Mass.2009) and *In re Parsley*, 384 B.R. 138 (Bankr. S.D.Tex.2008). *See also In re Cassell*, 254 B.R. 687, 691 (6th Cir. BAP 2000) (holding that BR 9011 applies to proofs of claim). The Plaintiff has not sought sanctions against Wells Fargo either under BR 9011 or Code § 105(a).

■■■ Moreover, even if the Plaintiff lacked remedies at law to address the violations he alleges, he cannot meet his burden of demonstrating that irreparable harm will ensue absent the issuance of an injunction. A party must establish that the failure to issue the injunction will likely result in irreparable harm. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir.1998). The Supreme Court has described the concept of "irreparable injury" as follows:

The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary

**22.** As to cases addressing standing and real party in interest issues pertaining to motions for relief from stay, *see In re Jacobson*, 402 B.R. 359 (Bankr.W.D.Wash.2009); *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr.C.D.Cal. 2008); *In re Vargas*, 396 B.R. 511, 520–21 (Bankr.C.D.Cal.2008); *In re Mitchell*, 2009 WL 1044368, at *2–6 (Bankr.D.Nev.Mar.31, 2009); and *In re Wilhelm*, 407 B.R. 392, 395 (Bankr.D.Idaho 2009). As to cases discussing standing and real party in interest issues pertaining to filing of proofs of claim, *see In re Wells*, 407 B.R. 873 (Bankr.N.D.Ohio 2009); *Owens v. Murray, Inc.*, 365 B.R. 835, 842 (M.D.Tenn.2007); and *In re Reilly*, 2009 WL 507063 (Bankr.D.Idaho Jan.9, 2009). *See also In re Burkett*, 329 B.R. 820, 826 (Bankr. S.D.Ohio 2005), *In re Foreclosure Cases*, 2007 WL 3232430, at *2 (N.D.Ohio Oct.31, 2007)

and *In re Foreclosure Cases*, 521 F.Supp.2d 650 (S.D.Ohio 2007).

**23.** Pursuant to BR 9011, by presenting any paper to the court, a party is certifying to the best of that party's knowledge that, among other things, the allegations and factual contentions contained in such paper have a legal and factual basis. BR 9011(b). Further, if after notice and a reasonable opportunity to respond (a show cause order), the court determines that subsection (b) has been violated, subsection (c) provides a mechanism to request sanctions and prescribes sanctions. BR 9011(c). In particular, a party who wishes to move for sanctions under Rule 11 must comply with certain prerequisites set forth in the rule. BR 9011(c)(1)(A).

course of litigation, weighs heavily against a claim of irreparable harm. *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), *quoting Va. Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958) (emphasis added). Courts have wide discretion in evaluating the irreparability of the harm. *Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.),* 382 B.R. 90, 115 (Bankr. E.D.Mich.2008). A plaintiff's harm is not irreparable if it can be fully compensated by money damages. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992).

Except for broad assertions regarding his duty as bankruptcy trustee to "ensure that persons who make claims as creditors are, in fact, creditors of the debtor at the time of the bankruptcy petition and/or persons who make claims as being secured are, in fact, creditors or secured creditors of the bankruptcy estate" (Amended Complaint, ¶ 16), nowhere in the Amended Complaint or in any of his subsequent filings has the Plaintiff explained how irreparable harm will ensue if an injunction does not issue against the Wells Fargo Entities. The court acknowledges that the filing of motions for relief from stay or proofs of claim by persons who are not creditors of an estate can burden a Chapter 7 panel trustee and the court. However, any harm caused by such burden is not irreparable. As explained above, the Plaintiff has various remedies to be compensated for any damages sustained as a result of the additional work created by the filing of erroneous and inaccurate pleadings, motions, and papers, including sanctions under BR 9011 and § 105(a).

Finally, to the extent that Count VI seeks injunctive relief as a remedy for Counts I and II, it must also be dismissed because the claims set forth in Counts I and II are not viable and have been dismissed.[24]

## V. *Conclusion*

For the foregoing reasons, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted and the court grants Wells Fargo's Motion to Dismiss. A separate Order will be entered by the court dismissing this adversary proceeding in accordance with this decision.

**IT IS SO ORDERED.**

---

**24.** The Plaintiff cites in support of his request for injunctive relief the case of *Ripple Junction Design Co. v. Olaes Enterprises,* 2005 WL 2206220 (S.D.Ohio Sept.8, 2005). The Plaintiff's reliance on this case is misplaced. The *Ripple Junction* court refused to dismiss the plaintiffs substantive claim which, if ultimately successful, would entitle the plaintiff to injunctive relief. *Id.* at *5. The court in this proceeding is dismissing all of the Plaintiff's substantive claims.